**Harold TATE, Plaintiff,**

v.

**Charles YENOIR, Defendant.**

**Civ. No. 81–10015.**

United States District Court,
E. D. Michigan, N. D.

April 5, 1982.

Mark J. Brissette, Bay City, Mich., for plaintiff.

A. T. Lippert, Jr., Saginaw, Mich., for defendant Arenac County.

Owen Cummings, Livonia, Mich., for defendants Sheriff's Dept. and Yenoir.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Stated generally, the question before the Court is what, if any, constitutional protection is afforded an undersheriff when he is subpoenaed to testify in a criminal trial as a rebuttal witness and testifies for the defendant and against the state and fellow undersheriffs. Plaintiff was fired as a result of his testimony. Under 42 U.S.C. § 1983, plaintiff claims his firing unlawfully deprived him of, inter alia, his First and Sixth Amendment rights. The matter is before the Court on defendant's motion pursuant to F.R.s Civ.P. 12(b)(6) and 56.

## FACTS

The following may be discerned from the pleadings and other documents filed herein. F.R.Civ.P. 12(b)(6).

Charles Yenoir, defendant, was elected Sheriff of Arenac County in November, 1976. Harold Tate, plaintiff, was thereafter appointed to the position of undersheriff. Late in 1978, Buel Evans was prosecuted in Arenac County on the charge of assault. During the investigation and trial, accusations were made against Arenac County Deputy Sheriffs Wissmiller and Hill alleging the use of excessive force against Evans. While the Court will refrain from reproducing all the details in this regard, it is sufficient to state at this juncture that defendant ordered plaintiff to investigate the accusations made by Evans.

At the Evans trial, a Deputy Mosciski testified that Wissmiller and Hill were good officers. Plaintiff was subpoenaed to rebut Mosciski's testimony. Based on plaintiff's investigation of the Evans matter and discussions with Mosciski, among others, plaintiff testified under oath that he believed Wissmiller and Hill were lying as to the events surrounding the Evans incident and arrest. The jury acquitted Evans.

After the trial, the undersheriffs in the Arenac County Sheriff Department submitted a petition to the defendant seeking plaintiff's resignation. Plaintiff was fired on January 26, 1979, after receiving a two week notice. Both parties acknowledge that a consequence of plaintiff's testimony was dissention within the department. The defendant claims, however, that plaintiff was fired because of poor job performance and for the "benefit" of the department.

## DISCUSSION

### I. *Plaintiff's Sixth Amendment Claim*

The Sixth Amendment to the United States Constitution states:

> *In all criminal prosecutions, the accused* shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. (Emphasis added.)

Plaintiff was not the criminal defendant in the Evans case. Thus, the issues are (1) whether plaintiff may assert Evans' Sixth Amendment rights vicariously and thereby state a claim under 42 U.S.C. § 1983, and (2) whether plaintiff may assert a Sixth Amendment right individually or independent of Evans and thereby state a claim under 42 U.S.C. § 1983.

The Court observes that *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct.

961, 966, 22 L.Ed.2d 176 (1969) says that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Consequently, the Supreme Court rejected the thesis that a third party possesses an "independent Constitutional right ... to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment." *Id.* This same logic has been applied in the context of the Sixth Amendment with the same result. *Gannett Co. Inc. v. De Pasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

It is clear that the subject of the amendment is the "accused" "in all criminal prosecutions." Plaintiff obviously was not the defendant in the Evans trial. The Court does not believe that a fair interpretation of the Sixth Amendment could hold that the rights secured by the amendment are applicable to a person other than an accused. Indeed, the case law reviewing that amendment and the issues raised therein have concerned only the accused. *See, e.g. Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (the right of an accused to have compulsory process for obtaining witnesses in his favor); *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (the right of an accused to a speedy trial); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (the right of an accused to be confronted with the witnesses against him); *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (the right of an accused to the assistance of counsel); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (the right of an accused to a public trial); *Angel v. Overberg*, 664 F.2d 1052 (CA 6, 1981) (the right of an accused to a fundamentally fair trial).

■ Since the rights secured by the Sixth Amendment àre personal to an accused in a criminal trial, defendant's motion to dismiss as to this claim is hereby GRANTED.[1]

## II. *Plaintiff's First Amendment Claim*

Defendant maintains that plaintiff's testimony was not "protected speech" because it did not involve "political speech or matters of public opinion." He asserts further that the courtroom is not the "type of public forum" from which matters of public opinion normally flow. He concludes that plaintiff's testimony is not afforded First Amendment protection and therefore plaintiff fails to state a cause of action against defendant. The gravamen of defendant's argument however is that since plaintiff's testimony had a disruptive impact on the Sheriff Department, then plaintiff's speech was not protected under the First Amendment.

Relying on *Hoopes v. Nacrelli*, 512 F.Supp. 363 (ED Pa.1981), plaintiff argues that he has pled a cognizable First Amendment claim for purposes of 42 U.S.C. § 1983. In *Hoopes*, the plaintiff, claimed under 42 U.S.C. § 1983, that his First Amendment rights were violated when he was fired after testifying against Mayor Nacrelli at Nacrelli's federal criminal trial on corruption charges. In that case, the Court ruled "[w]ith respect to Hoopes' First Amendment claim, there is no question that his testimony at trial did constitute constitutionally protected speech." *Hoopes, Id.* at 364.

Since plaintiff was a public emplóyee, the Court must initially turn to the "two step analysis" established in *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); and *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See, Anderson v. Evans*, 660

---

1. The Court observes that since plaintiff did in fact testify fully, Evans was not deprived of any of his Sixth Amendment rights. Under 42 U.S.C. § 1983, one may not sue for the deprivation of another's civil rights. *Cf. Hall v. Wooten*, 506 F.2d 564 (CA 6, 1974). While the issue is moot in view of the Court's determination of the applicability of the Sixth Amendment, the Court is hardpressed to discern how plaintiff can vicariously assert a deprivation which never occurred.

F.2d 153, 158 (CA 6, 1981). The "first step" of that analysis requires a determination of whether the speech exercised is protected under the First Amendment in the context of public employment. *Anderson, supra,* 660 F.2d at 158. This determination requires a balancing of the needs of the governmental body to maintain and promote the efficient and harmonious operation of public services against the rights of the individual government employee, as a citizen, to comment on matters of public concern. *Id.*

Thus, in determining whether the speech exercised is protected under the First Amendment, the Court considers the following factors, among others:

1. Whether plaintiff, in the course of his activities, made statements which were directed against a person with whom he had regular contact within the daily course of his duties;

2. Whether plaintiff's activities created a problem with maintaining discipline by immediate superiors or with maintaining harmony among co-workers;

3. Whether the relationship between superior and subordinates was of such a personal and intimate nature that plaintiff's activities seriously undermined the working relationship between them;

4. Whether plaintiff's activities substantially impeded the plaintiff's performance of his official duties; and

5. Whether the plaintiff's activities related primarily to matters of concern to the plaintiff personally, as opposed to matters of concern to the public generally.

*See, e.g. Givhan, Mt. Healthy* and *Pickering, supra; Doyle v. Mt. Healthy City School District Board of Education,* 670 F.2d 59 (CA 6, 1982); *Hildebrand v. Board of Trustees of Michigan State University,* 662 F.2d 439 (CA 6, 1981); *Hickman v. Valley Local School District Board of Education,* 619 F.2d 606 (CA 6, 1980); *Barrett v. Thomas,* 649 F.2d 1193 (CA 5, 1981); *Schneider v. City of Atlanta,* 628 F.2d 915 (CA 5, 1980).

The Court admits that the applicable case law is unclear on the question of how much probative weight should be accorded each of the above enumerated factors. *See Anderson, supra,* 660 F.2d at 160–166 (Rice, J., sitting by designation, dissenting). Nevertheless, plaintiff admits that his testimony caused significant division between the undersheriffs. Indeed, every co-worker demanded his resignation because of his testimony. While plaintiff's testimony involved matters of public concern, there is no escaping the conclusion that plaintiff's statements had an effect on the necessarily close working relationship of the undersheriffs and had, in substantial measure, a disruptive impact on the quality of services provided by the Sheriff Department. Under a strict First Amendment analysis, pursuant to *Givhan, Mt. Healthy* and *Pickering, supra,* this Court would be constrained to conclude that on balance, plaintiff's testimony was not protected speech. Accord, *Hoopes v. Nacrelli,* 512 F.Supp. 363, 368 (ED Pa.1981). This finding would end the Court's inquiry and leave the plaintiff remediless. *See, Anderson, supra,* 660 F.2d at 158.

This Court, however, like the *Hoopes'* Court, is "hesitant to conclude that the *Pickering* principle should automatically allow the [defendant] to act with impunity." *Hoopes, supra,* 512 F.Supp. at 365–366. Plaintiff was subpoenaed to testify as a rebuttal witness in the Evans case. It may be assumed fairly that plaintiff was subpoenaed to testify because he had information which Evans believed was important to his case. Under such circumstances, plaintiff had three basic options available to him. He could have decided to ignore the subpoena and refuse to show. He could have decided to show and testify untruthfully. Finally, he could have decided to show and testify completely and truthfully. Obviously, the third option presents the only viable alternative to the plaintiff. It is a fundamental obligation of citizenship to provide testimony, when summoned, and to assist, when necessary, in the administration of justice. *See United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141

(1980); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Blair v. United States*, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

Plaintiff's testimony at the Evans trial fell outside of any exception which may have constitutionally precluded its offering or admission into evidence, e.g. self-incrimination or privileged communication. *See Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Consequently, plaintiff was duty bound, under penalty of law, to answer each question completely and honestly. *See, Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. Bryan*, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950). This duty to society has been held to be so critical that pecuniary loss, fear of personal injury, or worse will not serve to justify a failure to testify. *See, Hurtado v. United States*, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *Piedmonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *Brown v. Walker*, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896). In view of the plaintiff's legal duty to testify and the judiciary's inherent power to compel testimony, the Court believes that speech in the form of "testimony" presents a First Amendment question different from that considered in *Givhan, Mt. Healthy* and *Pickering*.

Conspicuously absent from this case is what the Court believes is rudimentary in a Section 1983—First Amendment—wrongful termination claim and that is the inherent character of "voluntariness" to the words spoken. Once subpoenaed, plaintiff in this case had to testify freely and honestly at the Evans trial. Also missing from this case is what the Court believes is the traditional justification for imposing a degree of risk upon a public employee who undertakes the exercise of First Amendment rights as well as the corresponding traditional justification for allowing a public employer to exercise reasonable control over the conduct of its employees. The purpose of a trial is fact finding; its goal is truth. The public's and the Court's rightful expectation that justice will be served far outweighs the persuasive force which underlies the "first step" of the *Pickering* balancing test. To hold otherwise would place a judicial imprimatur on the intolerable occurrence of allowing a witness' testimony to be compromised out of fear of what that witness' employer may think or do. These considerations must apply equally to public and non-public employees if the judicial process is to function effectively and fairly.

▮ The above considerations lead this Court to conclude that if the "speech" at issue is actually "testimony" taken during the course of the judicial process, then the "first step" of the analysis derived from the *Givhan, Mt. Healthy* and *Pickering* trilogy is inapplicable.[2] Stated affirmatively, speech in the form of testimony is constitutionally protected as a matter of law.[3] The Court believes that the practice at issue implicates a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). To permit an employer to in effect substantively regulate an employee-witness' testimony would in this Court's judgment violate a

**2.** From a practical standpoint plaintiff will have to prove by a preponderance of the evidence that his "speech" or testimony at the Evans trial played a "substantial role" or was a "motivating factor" in the termination of his employment. *Givhan, supra*, 439 U.S. at 416, 99 S.Ct. at 697; *Mt. Healthy, supra*, 429 U.S. at 287, 97 S.Ct. at 576. If plaintiff meets this burden, then defendant will be required to prove by a preponderance of the evidence that he would have terminated plaintiff's employment even in the absence of plaintiff's protected "speech" or testimony. As the proofs indicate, plaintiff's "position as a result of the exercise of constitutionally protected conduct [is no better] than he would have occupied had he done nothing." *Mt. Healthy, Id.* at 285, 97 S.Ct. at 585.

**3.** The Court notes that whether a plaintiff's "speech" is constitutionally protected is a question of law for the trial court. *See, Schneider v. City of Atlanta*, 628 F.2d 915, 918–920 (CA 5, 1980) and cases cited therein.

fundamental principle of "liberty and justice which [lies] at the base of all our civil and political institutions." *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926).

 Fundamental fairness requires that an employee-witness be free from fear of retribution by an employer in the form of employment termination.[4] Secondly, the type of speech at issue, while defying precise categorization, is of great public concern. An adjunct to these two considerations is the obvious need for complete and honest testimony or more specifically, the maintenance of the integrity of the judicial process. The Court believes that the above notions are inextricably intertwined and are intrinsic in "the very essence of a scheme of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

For these reasons, defendant's motion to dismiss plaintiff's First Amendment claim is DENIED.

## CONCLUSION

Defendant's F.R.s Civ.P. 12(b)(6) and 56 motion as to plaintiff's Sixth Amendment claim is hereby GRANTED. The Court concludes under the facts herein that Sixth Amendment rights are personal rights which may not be asserted by one other than an accused in a criminal prosecution. Defendant's similar motion with respect to plaintiff's First Amendment claim is hereby DENIED. The Court concludes that plaintiff has stated a cognizable First Amendment claim under 42 U.S.C. § 1983 and that his speech in the form of testimony taken during the course of the judicial process is constitutionally protected as a matter of law; thereby eliminating the need to prove the "first step" of the *Givhan, Mt. Healthy* and *Pickering* "balancing test."

IT IS SO ORDERED.

---

4. Relying on *Branti v. Finkel*, 445 U.S. 507, 509, 100 S.Ct. 1287, 1290, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), defendant argues that since plaintiff's position was based on political patronage, then he could be fired at defendant's pleasure. The Court disagrees. Neither *Branti* nor *Elrod* place a public employer above the law. Defendant could not fire plaintiff for an unconstitutional reason. *Branti, supra*, 445 U.S. at 520, 100 S.Ct. at 1296; *Elrod, supra*, 427 U.S. at 367, 375, 96 S.Ct. at 2690.