Richard C. COPP, Plaintiff–Appellee,

v.

UNIFIED SCHOOL DISTRICT # 501; Topeka Board of Education; Joe Douglas, Jr.; Peggy M. Boggs; Joyce C. Romero; Mary Jo Bergkamp; Howard Ward; Ron Taylor; Ron Hall; Owen M. Henson; Don R. O'Neil; Tony Vargas; and Dennis Dunklee, Defendants–Appellants.

Kansas Association of School Boards, Amicus Curiae.

Nos. 87–1443, 87–1838.

United States Court of Appeals, Tenth Circuit.

Aug. 21, 1989.

---

1548

Fred W. Phelps, Jr. (Brent D. Roper, with him on the brief) of Phelps—Chartered, Topeka, Kan., for plaintiff-appellee.

William G. Haynes (Wendy E. Johnston, with him on the briefs) of Edison, Lewis, Porter & Haynes, Topeka, Kan., for defendants-appellants.

Cynthia K. Lutz of the Kansas Ass'n of School Boards, Topeka, Kan., for amicus curiae.

Before MOORE and EBEL, Circuit Judges, and PHILLIPS, District Judge.*

PER CURIAM.

Defendants appeal from the district court's denial of their motion for judgment notwithstanding the verdict. The jury awarded plaintiff damages on his claim that defendants had transferred him to a different job in violation of his First Amendment rights of free association and speech. We conclude that plaintiff failed to prove a violation of his association rights. Consequently, defendants' motion should have been granted on that issue. We also conclude, however, that the plaintiff's speech was protected. Because we cannot be sure whether the jury awarded damages based upon the association claim, the speech claim, or both, we remand for a new trial on the speech claim.

## I. FACTS

Plaintiff Richard Copp was employed as the head custodian of Topeka High School in Topeka, Kansas. There, he became close friends with the school's principal, Frank Blackburn, and he formed the relationship with Blackburn upon which this case centers.

Testimony revealed that Blackburn delegated an unusual amount of authority to plaintiff. For example, Blackburn authorized plaintiff to sit in on staff meetings and perform functions considered administrative rather than custodial.

In May 1983, a former female employee of Topeka High, Sharon McCubbin, sued Blackburn, the school district, and certain administrators for sexual harassment. That lawsuit ultimately led to Blackburn's proposed transfer from Topeka High and spawned a subsequent suit by Blackburn in which he claimed that the school district had failed to provide him with legal counsel to defend against the McCubbin claim.

In June 1984, prior to Blackburn's transfer, plaintiff appeared at a public meeting of the Board of Education to express his opposition to Blackburn's transfer. The Board, nonetheless, transferred Blackburn to an elementary school in the district. Three weeks later the Board also transferred plaintiff to the Topeka Adventure Center. At his new post, plaintiff was required to do more physical labor and had relatively few supervisory duties. Further, plaintiff became an hourly employee at the district's smallest school in contrast to his former salaried and supervisory position at the district's largest school.

Dennis Dunklee, the acting principal of Topeka High, testified that he recommended plaintiff's transfer because he thought it would be the least disruptive way to diminish the excessive authority that plaintiff had acquired through his close relationship with Blackburn. The Board agreed with Dunklee's assessment.

Plaintiff brought this action against the Board, alleging that it had transferred him in retaliation for his speech before the Board and because of his association with Blackburn. Plaintiff also claimed that the Board deprived him of due process of law. The jury found for plaintiff and awarded him $30,000 for future lost wages and benefits, $20,000 for mental pain and suffering, and $33,000 for punitive damages. Defendants then moved for a judgment not-

* Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation.

withstanding the verdict. The trial court granted the motion as to plaintiff's due process claim but left the verdict standing on the speech and association claims. In this appeal, defendants contend that neither plaintiff's speech nor his association with Blackburn was protected by the First Amendment.

## II.  FREEDOM OF ASSOCIATION

To support his freedom of association claim, plaintiff relies on *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). *Button* involved a Virginia statute that prohibited organizations from soliciting legal business. The NAACP claimed that its solicitation of civil rights plaintiffs for school desegregation cases constituted a mode of expression and association protected by the First Amendment and, thus, could not be prohibited. The Supreme Court agreed, reasoning that "[i]n the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government ... for the members of the Negro community in this country." *Id.* at 429, 83 S.Ct. at 336.

In *Owens v. Rush,* 654 F.2d 1370, 1379 (10th Cir.1981), we construed *Button* as protecting activities involving the assistance of litigation vindicating civil rights. Accordingly, we held that "attending meetings on necessary legal steps" and "associating for the purpose of assisting persons seeking legal redress" are modes of expression and association protected by the First Amendment. *Id.* Thus, we allowed a police officer to pursue a First Amendment claim when he alleged that the sheriff's department fired him because he assisted

his wife in filing a sex discrimination claim against the department.

■ In the present case, plaintiff claims that he was assisting Blackburn in litigation vindicating his civil rights. Even if we assume, for argument's sake, that Blackburn's lawsuit against the school district constituted litigation to vindicate a civil right, we cannot say that plaintiff assisted in that litigation in a way covered by *Button*. At trial, plaintiff expressly stated that at the time of his transfer he had done nothing to assist Blackburn in that litigation.[1] Furthermore, plaintiff conceded that the assistance that he provided in that litigation had nothing to do with plaintiff's lawsuit.[2] Thus, there is no factual support for plaintiff's contention.

To be sure, plaintiff was to be a witness in the sexual harassment suit against Blackburn and the school district. Plaintiff believed the relationship between Blackburn and the plaintiff in that suit was voluntary and agreed to so testify. Ultimately, several months *after* the Board transferred plaintiff, he was deposed in Blackburn's case. Plaintiff does not, however, claim that the Board retaliated against him for his testimony at that deposition. *See Tate v. Yenoir,* 537 F.Supp. 306, 310 (E.D.Mich.1982) ("speech in the form of testimony is constitutionally protected as a matter of law").

Plaintiff claims he was threatened by the school district's attorney to cooperate in the sexual harassment case. Plaintiff's own description of this conversation, however, is not supportive of his claim and suggests only that the attorney wished to hear plaintiff's version of the events surrounding the sexual harassment claim.[3]

1. On cross-examination the following exchange took place:

    Q. And when you appeared at the board meeting on June 6, what had you done to assist Mr. Blackburn with his, with regard to his dispute, if anything, about the district paying attorney fees to the Phelps firm?
    A. I'm not aware of that.
    Q. And at the time you were transferred on June 29, what had you done, if anything, with regard to assisting Mr. Blackburn with regard

    to the defense of the McCubbin [sexual harassment] case.
    A. I'm not aware of anything.
    *Vol. VII* at 1259–60.

2. *Vol. VII* at 1261.

3. Plaintiff testified that the following conversation took place between the school district's attorney and himself in January 1984:

    [The school attorney] says, "I understand you know something about the Blackburn case,"

Plaintiff's description of the conversation does not suggest that the attorney was demanding improper disclosures from plaintiff, nor does it suggest that the attorney was threatening plaintiff's employment for his alignment with Blackburn in the pending litigation.

In light of those circumstances, we do not believe that plaintiff's posture as a potential witness at the time of his transfer rises to the level of assisting in litigation as that term is construed in *Owens.* Therefore, we cannot conclude that plaintiff's relationship to the Blackburn litigation triggers a freedom of association claim.

■ In addition, plaintiff claims that he was transferred because of his general association with Blackburn. Indeed, there is evidence that tends to support that assertion. The testimony reveals that school officials and parents were genuinely concerned with the excessive authority plaintiff wielded because of his close relationship with the former principal. The evidence also shows that school officials believed it to be in the school's best interest to transfer plaintiff because of that relationship. Thus, it cannot be denied that plaintiff was transferred at least partly because of his relationship with Blackburn. We do not believe, however, that plaintiff's relationship with Blackburn is the type of association that the First Amendment shelters from governmental action, and plaintiff cites no case which conflicts with our conclusion.

The right to associate protects an individual's decision to "enter into and maintain certain intimate human relationships." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). In general, those protected relationships have involved familial settings not present in the case before us. *Id.* at 619–20, 104 S.Ct. at 3250–51. *See also Grossart v. Dinaso*, 758 F.2d 1221, 1232 n. 16 (7th Cir.1985) (right to associate does not include emotional bonds between public employees). Thus, we hold that plaintiff possessed no First Amendment right to associate generally with Blackburn.

### III. RIGHT OF FREE SPEECH

■ Having determined that plaintiff does not possess a valid freedom of association claim, we are left to consider his claim that he was transferred because of his speech at the School Board meeting. In order to prevail on his speech claim, plaintiff must satisfy a three-prong test established by the Supreme Court in *Mount Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under *Mount Healthy*, an employee challenging an adverse employment decision initially must show that, as a matter of law, his speech deserves constitutional protection. *Id.* at 284, 97 S.Ct. at 574–75. Once the court determines that the speech is worthy of protection, the employee must prove as a factual matter that the protected speech was a substantial or motivating factor in the adverse employment decision. *Id.* at 287, 97 S.Ct. at 576. The burden then shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Id.; see also Saye v. St. Vrain Valley School*

and I said, "Yes, I do," and he said, "Will you tell me?" and I says, "No, I won't," and he says, "Why?" and I says, "Because you're not the counselor for Mr. Blackburn," and then he said, he says, "You know I'm the counselor for the Board of Education," and I says, "Yes, I do," and he says, "You know you work for the district," and I said, "Yes, I do" ..., now, he says, "Do you want to tell me what you know" and I said "no" and he says, "Well, you know, I can talk to the superintendent," and I said, "Well, you go ahead and talk to the superintendent if you want to," and then he talked about the superintendent a little bit and at that point in time I was getting nervous because when he mentioned the superintendent I thought, *I didn't think there was a threat there,* that I'm supposed to talk to him and I says, "No I'm not going to talk to you," and he says, then he said, "Why don't you want to talk?" and I said, "Well, I think I need to get counsel before I talk to you," and then he went back to the superintendent again and I says, "You do what you have to do," and I got up and I walked out with the box.
Vol. VII at 1096–98 (emphasis added).

*Dist. RE–1J*, 785 F.2d 862, 865–66 (10th Cir.1986).

■ The first prong of *Mount Healthy*, whether speech is constitutionally protected, necessarily involves the two-part test articulated in *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968): (1) whether the speech comments on a matter of public concern; and (2) whether the employee's interest in making such statements outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

■ The Supreme Court has characterized a matter of public concern as a matter "fairly considered as relating to any matter of political, social, or other concern of the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690, *quoted in Rankin v. McPherson*, 483 U.S. 378, 385, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987). In light of those standards, we conclude that plaintiff's speech before the School Board constituted a matter of public concern.

Plaintiff's speech was before a governmental body, the Topeka School Board, concerning a matter that was properly within the Board's official responsibility—the discipline or transfer of a high school principal.[4] The speech was presented under a Board agenda item soliciting public comments.[5] Plaintiff's speech sought and received public response from the audience at the meeting, and the news media covered the speech as an event of public interest.[6] There is no evidence in the record that plaintiff's speech was in any way inflammatory or threatening, or that the "man-

ner, form and context" in which he presented his ideas was inappropriate. Moreover, plaintiff spoke at the Board meeting on his own time and as a citizen, not privately as an employee. *Cf. Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Those facts are sufficient to establish the public nature of the speech. *See Lewis v. Harrison School Dist. No. 1*, 805 F.2d 310, 316 (8th Cir.1986) (principal's speech to school board criticizing superintendent's decision to transfer principal's wife from high school to junior high was matter of public concern), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987); *Wren v. Spurlock*, 798 F.2d 1313, 1317 (10th Cir.1986) (teacher's written complaints about principal were matters of public concern), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987).

■ Because plaintiff's speech commented on a matter of public concern, we must next address whether plaintiff's interest in making the speech outweighed the School Board's interest "in promoting the efficiency of the public services it performs through its employees." *See Pickering*, 391 U.S. at 568, 88 S.Ct. at 1735. In that inquiry, "pertinent considerations [are] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899. Here, our task is simplified by defendants' failure to present any evidence that plaintiff's speech had any deleterious effects on discipline, working relationships, plaintiff's performance, or the regular operations of the school. Indeed, defendants do not even argue that the decision to transfer plaintiff was based on their conclusion that plaintiff's speech was dis-

---

**4.** Plaintiff's Ex. 35; Vol. V at 772, 777.

**5.** Plaintiff's Ex. 35.

**6.** The June 7, 1984, Topeka Capital Journal article read:

The transfer of Blackburn was challenged by one person at the meeting. Blackburn was being 'put out to grass' with his reassignment. He urged the Board to rescind its action and return Blackburn to the principal's office at Topeka High.
Plaintiff's Ex. 3; Vol. III at 463–65.

ruptive or that it was harmful to the School District's ability to fulfill its public responsibilities. Rather, they argue that plaintiff's speech played no part in their decision [7] and that the transfer was routine and represented the least disruptive way to diminish the excessive authority and ameliorate the effects of the abrasive personality that plaintiff had developed through his close relationship with Blackburn.[8] Therefore, because the record is silent as to any "government interest" to balance against plaintiff's interest, we must conclude that plaintiff's speech was protected. *See Ware v. Unified School Dist. No. 492*, 881 F.2d 906 (10th Cir.1989) (defendants' contention that they were justified in terminating plaintiff was "fatally undermined by defendants' failure to assert it at trial or present any evidence to support it"); *Rankin v. Independent School Dist. No. I-3*, 876 F.2d 838, 844 n. 8 (10th Cir.1989) ("[The Pickering] balancing test is not at issue here. Defendants do not argue that the decision not to renew Rankin's contract was based on a conclusion that his speech was too disruptive; rather, defendants argue that Rankin's speech played no part in their decision."); *Saye v. St. Vrain Valley School Dist. RE-1J*, 785 F.2d 862, 865–66 (10th Cir.1986) ("Defendants here do not argue that they acted to protect such an interest; indeed they argue instead that Saye's union participation played no part in the adverse decision. We thus conclude that Saye's union activities were constitutionally protected.").

■ Because we are satisfied that plaintiff's speech was protected, we turn to the second prong of *Mount Healthy*, the factual question of causation. To satisfy his burden of proving causation, plaintiff need not prove that his speech was the sole reason for defendants' action. It is enough if the speech was a substantial or motivating factor in causing defendants to transfer him. *See Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Our review of the record persuades us that there was sufficient evidence on causation to send the speech issue to the jury.

■ The dissent suggests that the district court should have granted defendants' motion for judgment notwithstanding the verdict on the ground that plaintiff made no showing that his speech was a motivating or substantial factor in his transfer and that, in fact, plaintiff conceded at trial that his speech was *not* the reason for his transfer. We disagree for two reasons. First, defendants did not challenge the adequacy of the proof of causation arising from plaintiff's speech in their motion for judgment notwithstanding the verdict, nor do they challenge the adequacy of the proof of causation on appeal. Accordingly, defendants have effectively waived that issue. *See FDIC v. Liberty Nat'l Bank & Trust*, 806 F.2d 961, 963 n. 1 (10th Cir.1986) (court need not consider issues not raised on appeal); *Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir.1984) (issue not raised on appeal deemed waived).

Second, even if we were to consider the merits of that issue, plaintiff's testimony merely indicates that he may have subjectively believed that he was not transferred because of his speech.[9] That is only one piece of evidence on the issue of causation. Also relevant to our inquiry is the evidence that (1) there were threats of retaliation to those who signed the plaintiff's petition that was presented at the Board meeting; [10] (2) the acting principal had stated that

---

7. Vol. II at 136–37; Vol. VIII at 1633, 1661; Doc. 84 at 9.

8. Vol. II at 131; Vol. III at 308–316; Vol. IV at 660; Vol. V at 781.

9. Although plaintiff appears to have stated that, in his opinion, his transfer was due to his association with Blackburn rather than his appearance before the Board, plaintiff was somewhat confused during his testimony. For example, he initially said that he felt that his transfer was

at least in part in retaliation for his speech before the Board. Vol. VII at 1253–54. The subsequent colloquy concerning plaintiff's deposition testimony was valid for impeachment purposes, but did not rise to the level of waiver of the speech claim. Likewise, plaintiff's subsequent testimony concerned his motive for filing the lawsuit, not defendant's motive for transferring him. *See* Vol. VII at 1262–63.

10. Vol. VI at 1036–57.

plaintiff's speech had not done plaintiff any good,[11] and (3) the reason given for his transfer (a "human relations" problem of plaintiff's inability to get along with people) may have been pretextual, as evidenced from the total absence of documentation corroborating the alleged problem.[12]

Moreover, the chronology of events give rise to the inference that plaintiff was transferred because of his speech. *Cf. Luethje v. Peavine School Dist.*, 872 F.2d 352, 354 (10th Cir.1989) ("sequence of events detailed above strongly indicates that plaintiff's suit was, at the very least, a significant catalyst or substantial factor in causing defendants to change their policy"); *see also Ortiz De Arroyo v. Barcelo*, 765 F.2d 275, 282–83 (1st Cir.1985) (chronology of events is "an important factor" in determining causation). Plaintiff's speech before the School Board was on June 6. On June 11, the acting principal of Topeka High told plaintiff that his speech before the Board had not done him any good. On June 12, the acting principal recommended plaintiff's transfer, and on June 29, plaintiff was informed of the transfer. Thus, we conclude that there is sufficient evidence in the record to allow a jury to find causation.

■ As for the third prong of *Mount Healthy*, whether defendants would have transferred plaintiff even if he had not spoken at the Board meeting, defendants introduced evidence to the effect that they transferred plaintiff because of his association with Blackburn and the disruptive effect of that association on the school's morale,[13] and because of plaintiff's human relations problem.[14] Because we have determined that plaintiff has no constitutional right to associate with Blackburn, defendants would be relieved from liability if they can establish that they would have reached the same decision even in the absence of plaintiff's speech, which is the only protected conduct here.

Unfortunately, the special interrogatory on liability, which the jury answered in the affirmative, lumped together both the speech and association claims.[15] Thus, it is impossible to ascertain whether the jury concluded that plaintiff was transferred because of his speech at the Board meeting or because of his association with Blackburn. Nor is it possible to determine whether the jury found that defendants would have transferred plaintiff even if he had not made the speech. Accordingly, we must remand this case for a new trial on the issue of whether plaintiff's speech before the School Board was a substantial or motivating factor in the decision to transfer him and whether defendants would have transferred him even if in the absence of the protected activity.

## IV. OTHER ISSUES ON APPEAL

Defendants also appeal from the award of (1) damages for mental pain and suffering, which the district court did not reduce even though the court granted defendant's motion for judgment notwithstanding the verdict on plaintiff's due process claim; (2) future lost earnings; (3) punitive damages; and (4) attorney's fees. Because those issues are inextricably intertwined with the jury's finding of liability, which itself is irretrievably tainted by the First Amendment association issue, the district court should reconsider those issues on remand.

## V. CONCLUSION

For the foregoing reasons we REVERSE the district court's denial of defendants' motion for judgment notwithstanding the verdict on plaintiff's association claim. We REMAND for a new trial on the issues of whether plaintiff's speech was a substantial or motivating factor in plaintiff's transfer and whether defendants would have transferred him even in the absence of his

---

11. Vol. VII at 1111.

12. *E.g.,* Vol. V at 781–794.

13. *See* note 8.

14. Vol. V at 781–94.

15. The special interrogatory read: "Was plaintiff discriminated against by any of the defendants because of his speech or association under Section 1983?" Doc. 80 at 2.

protected speech, and on the issue of what damages, if any, stemmed from the alleged deprivation of plaintiff's right of free speech. We further REMAND for a determination of what attorney's fees should be awarded to plaintiff in light of the outcome of the new trial.

MOORE, Circuit Judge, dissenting:

It is difficult to take issue with colleagues who strive for a just result, but I must do so respectfully in this case for I believe the court has been too generous in its treatment of the evidence. While I am in general accord with the results achieved here, I think the court has gone too far in looking for inferences in the evidence that justify concluding Mr. Copp's speech was protected and that he met his burden of proof. I would remand with instructions to dismiss the case.

Without belaboring the point, I simply do not believe, viewed in context, Mr. Copp's speech meets the tests established in *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983); and *Koch v. City of Hutchinson*, 847 F.2d 1436, 1440 (10th Cir.) (en banc), *cert. denied,* — U.S. —, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). As we noted also in *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1984), whether speech is constitutionally protected depends in part on "whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway*, 853 F.2d at 796.

In its review of the circumstances leading the court to conclude Mr. Copp's speech was a matter of public concern, the court fails to consider whether the address was calculated to disclose facts relating to the administration's conduct of its governmental responsibilities or merely to support the personal interest of Mr. Copp's friend. I think the record is more supportive of the latter than the former.

I am also in disagreement over the court's unwillingness to address the key issue relevant to the speech question. A public employee alleging he has been adversely affected by an abuse of his right to free speech has the burden of proving his speech was a substantial or motivating factor behind the alleged adverse action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). That much has been recognized by the court in this case. However, after recognizing this burden, the court turns the plaintiff's failure to meet the test into the defendant's failure to preserve the issue for appeal. I believe in doing so the court has both ignored the fundamental facts of this case and advanced form over substance.

Our whole quest, with respect to the *Mt. Healthy* test is to determine whether Mr. Copp has shown that his appearance before the school board was in part responsible for his transfer. I believe that because Mr. Copp's proof fell short of any evidence his transfer was related in any way to his appearance before the board, he has not met the *Mt. Healthy* test the court has stated is fundamental to his case.

While the court has cited facts which it says are inferential of the board's motivation, and hence evidence of causation, I think these facts are too conjectural to be regarded as evidence. I believe the so-called "threats" and the statement of the acting principal that Mr. Copp's appearance had not done him "any good" are too remote to give rise to a proper inference of motivation. Nor do I find the "chronology of events" particularly revealing. Indeed, that chronology simply follows the board's objective in relocating both Mr. Blackburn and Mr. Copp. The fact that Mr. Copp appeared at a school board meeting at a point during the unfolding of this objective is as fortuitous as it is probative. Moreover, I think Mr. Copp's own explanation of the reason behind his transfer is worth more consideration than that given by the court. Although the court refers to Mr. Copp's admission that his transfer was a consequence of his association with Mr. Blackburn, it sweeps the statement aside with the suggestion that Mr. Copp was

"somewhat confused." At 1553, n. 9. In reaching that conclusion, I think the court has weighed the evidence and made its own findings. I disagree with that approach.

In short, I think Mr. Copp took his best shot and missed the target. I see no justice in putting the defendants or the taxpayers of the district to the time and expense of a second trial of a case that does not exist.