ORDER AND JUDGMENT *
EBEL, Circuit Judge.
After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.
Plaintiff Kamal K. Patel, a federal prisoner appearing pro se, appeals from the district court’s grant of summary judgment to defendants in his action brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We have jurisdiction under 28 U.S.C. § 1291.
At this juncture, plaintiffs remaining claim is for damages against defendants based on his assertion that they violated his Fifth Amendment right to the equal protection of the law while he was housed at the Federal Correctional Institution, Florence, Colorado (“FCI-Florence”). See Patel v. United States, No. 97-1083, 1997 WL 764570 (10th Cir. Dec. 4, 1997).[1] Plaintiff was housed at FCI-Florence from March 25, 1993 until January 26, 1997. He is a Hindu and therefore does not eat meat. He alleges that defendants failed to provide him with an appropriate substitute for meat on either of FCI-Florence’s two meal plans, even though defendants always provided Jewish and Muslim inmates with a substitute for pork, which Jews and Muslims do not eat.
The district court decided that plaintiff was not treated differently than other inmates because no inmate, whatever his religious faith, was allowed to choose the protein source in his meal. R. doc. 130, at 12. The district court therefore concluded that plaintiff had faked to establish a constitutional claim. Id. The district court also held in the alternative that defendants were following Bureau of Prisons (BOP) policy related to inmate meals and, as a result, were entitled to qualified immunity on plaintiffs claim. Id.
Plaintiff argues on appeal that: (1) BOP regulations do not shield defendants because defendants faked to accommodate his religious dietary restrictions whke accommodating the dietary needs of inmates of other faiths, even after they knew that he was a Hindu and did not eat meat; and (2) regulations governing the BOP’s “common fare” religious meal plan akowed defendants to replace a meat item with a vegetarian item from the shelf, but they refused to exercise this option.
We review the grant of summary judgment de novo. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 465 n. 10, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment is appropriate if there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. *650 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). To withstand summary judgment, the nonmoving party “must come forward with ‘specific facts showing that there is a genuine issue for trial.’ ” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Rule 56(e) (emphasis added)). The evidence is considered in the light most favorable to the non-moving party. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). When defendants base a motion for summary judgment on the defense of qualified immunity, the plaintiff must show that defendants violated “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
“[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups.” Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The challenged disparate treatment must be the result of purposeful discrimination. Harris v. McRae, 448 U.S. 297, 323 n. 26, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).[2] Because plaintiff is a prisoner, however, our analysis of his equal protection claim is guided by the Supreme Court’s decision in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Washington v. Harper, 494 U.S. 210, 223-24, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (“We made quite clear that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights.”). In Turner, the Supreme Court adopted a lower standard of scrutiny in evaluating the constitutionality of prison rules and regulations, in order to balance prisoners’ constitutional rights with the deference due officials delegated the responsibility of administering prisons. Id. at 84-85. The Court decided that “when a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.” Id. at 89. Four factors are relevant to determining the validity of a prison regulation that infringes a prisoner’s constitutional right: (1) whether a valid and rational connection exists between the regulation and a legitimate governmental interest advanced as a justification; (2) whether, notwithstanding the regulation, alternative means exist for the prisoner to exercise the right; (3) what effect an accommodation of the prisoner’s constitutional right would have on guards, inmates and prison resources; and (4) whether an alternative is available which would accommodate the prisoner’s rights at a de minimis cost to valid penological *651 interests. Id. at 89-91. Because the district court found that plaintiff had not made a prima facie showing of a constitutional violation, it did not consider these factors.
We hold that plaintiff made a sufficient threshold showing of an equal protection violation and the case must be remanded for the district court to do the Turner analysis. To briefly summarize the evidence more fully presented in his district court brief: pork was always accompanied by a protein substitute on the main cafeteria line. R. Vol. III, Doc. 106, Ex. A at 25, Ex. F at 54, Ex. G. This was done not as a matter of regulation, but as a matter of discretion. Id., Ex. A at 25. The practice originated because it would accommodate Jewish and Muslim inmates, who did not eat pork for religious reasons, although other inmates would also choose an alternative to pork. Id., Ex. C at 15-16. Pork was never served on the “common fare” religious diet, and meat was frequently the only entree. See id., Ex. D, Att. A. The common fare plan ostensibly serves the dietary needs of all faiths, but specifically mentions only issues of concern to Jews and Muslims. Id., Ex. D. Protein substitutes such as beans, cheese, and peanut butter were not regularly available on the salad bar. Id, Ex. B, ¶ 3. Such protein substitutes were regularly stocked in the kitchen and were readily available, however. Id, Ex. C at 18-19. The common fare regulations specifically allowed hot entrees on that meal plan to be replaced with “shelf stabilized meals from the commissary.” Id, Ex. D, Att. A at 1-7. Plaintiff told defendants that he desired a substitute for meat due to his religious beliefs. Id, Ex. H. In response, defendants told him to choose the common fare plan or to pick and choose between the main fine and the salad bar if he did not wish to eat a meat entree. Id
Defendants argue that they did not serve a substitute for pork to accommodate the religious needs of Jewish and Muslim inmates, and plaintiff therefore cannot show that they discriminated against him. This argument is without merit. By defendants’ admission, they intended to accommodate Jewish and Muslim inmates’ dietary restrictions on the common fare plan. Id, Ex. D. Plaintiff presented evidence that defendants began a practice of providing a meat substitute for pork on the main cafeteria line to accommodate Jewish inmates. Id, Ex. C at 15-16. Moreover, whatever the reason that defendants provided a meat substitute for pork on the main cafeteria fine, the effect of that practice was to accommodate the religious dietary needs of Jewish and Muslin inmates. Plaintiffs evidence therefore creates a genuine issue of fact as to whether defendants intentionally discriminated against him after he pointed out that the meat they provided as a substitute for pork on both plans did not satisfy the requirement of his Hindu faith to avoid meat as well as pork. A fair inference can be drawn that defendants deliberately treated plaintiff differently than Jewish and Muslim inmates.
Defendants also argue that the alleged disparate treatment between plaintiff and other inmates was justified because they were following BOP policy.[3] *652 This argument ignores that defendants’ conduct is not judged by whether it comported with BOP policy, but by whether this conduct comported with the Constitution. See Turner, 482 U.S. at 84-85. We decline to decide in the first instance whether the BOP meal regulations are valid under Turner.
Defendants maintain that plaintiff did not raise in the district court his argument that the common fare regulations allowed them to substitute a shelf item for the planned entree. Contrary to defendants’ assertion, plaintiff advanced this argument in his response to their motion for summary judgment. See, e.g., R. Vol. III, Doc. 106, at 2, 5, 16, Ex. B, at 2 ¶ 7, Ex. D, Att. 1, at 1-7.
In sum, because plaintiff made a prima facie showing of an equal protection claim, we REVERSE the district court’s grant of summary judgment to defendants, and REMAND for the district court to appoint counsel for plaintiff and to conduct further proceedings consistent with this order and judgment.[4] Plaintiffs motion to supplement the record with newly discovered evidence is denied.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

. Plaintiffs First Amendment claim, his only other claim to survive his first appeal, was dismissed by stipulation. See R. Vol. I, docs. 91, 92.

. This circuit has previously required a plaintiff to meet a heightened pleading standard when subjective intent was an element of the substantive claim and the defendant raised a qualified immunity defense. See, e.g., Breidenbach v. Bolish, 126 F.3d 1288, 1292 (10th Cir.1997) (reviewing denial of motion to dismiss); Gehl Group v. Koby, 63 F.3d 1528, 1535 (10th Cir.1995) (reviewing grant of summary judgment). We recently held, reviewing a dismissal under Fed.R.Civ.P. 12(b)(6), that our heightened pleading requirement does not survive the Supreme Court’s opinion in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Currier v. Doran, 242 F.3d 905, 916 (10th Cir.2001). Even though we were reviewing a dismissal in Currier, we noted that Crawford-El decided that the D.C. Circuit's heightened pleading requirement at the summary judgment stage was improper. Currier, 242 F.3d at 913-14, 916. Thus, there is no question that our heightened pleading requirement at the summary judgment stage was also overturned by Crawford-El.

. Plaintiff moves to supplement the record with evidence that FC1-E1 Reno, Oklahoma, provides a no-flesh alternative to meat. Plaintiff offers this evidence ostensibly to prove that BOP policy did not prevent defendants from accommodating his requests for such a substitution at FCI-Florence. Because this evidence was created several years after the events plaintiff complains of at FCI-Florence, and because it was not presented to the district court, we decline to consider it now. *652 Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1458 n. 13 (10th Cir.1997).

. Defendants on appeal do not assert the defense of qualified immunity, so we decline to address it.