Dale E. MCCORMICK, Curtis A. Kastl, II, Robert Coburn, and Merrily Coburn, Plaintiffs,

v.

CITY OF LAWRENCE, KANSAS, et. al. Defendants.

No. 02–2135–JWL.

United States District Court, D. Kansas.

March 7, 2003.

Gerald L. Cooley, Randall F. Larkin, Allen & Cooley, Lawrence, KS, for City of Lawrence, Kansas.

M. J. Willoughby, Office of Attorney General, Topeka, KS, for Defendants.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This action involves a number of 42 U.S.C. § 1983 claims Dale E. McCormick

has brought against government officials of both the City of Lawrence and the State of Kansas, alleging that they have violated his constitutional rights on a number of occasions. Three of Mr. McCormick's claims stem from an Assistant Attorney General's decision to file a complaint against Mr. McCormick for the unauthorized practice of law in a case in which the Assistant Attorney General was involved. As part of a subsequent investigation of Mr. McCormick, two officials in the Office of the Attorney General, Consumer Protection Division, subpoenaed Merrily Coburn—the plaintiff in the underlying action on behalf of whom Mr. McCormick was accused of practicing law—to appear before them to answer questions regarding Mr. McCormick's involvement in the case and to produce her work product relating to the case. Based on the subpoena being issued and the harassing manner in which Ms. Coburn believes she was treated, she, along with her husband, Robert Coburn, have joined as additional plaintiffs in this action. They filed a pleading (which is entitled "Claims for Which Intervention is Sought by Robert Coburn and Merrily Coburn") setting forth their § 1983 claim for "Retaliating against Exercising First (and Fourteenth) Amendment Speech and Association Rights."

The matter is currently before this court on the Attorney General defendants' motion to dismiss the claim of Robert and Merrily Coburn (Doc. 144) for failure to state a claim upon which relief can be granted. Defendants assert that the Coburns' claim should be dismissed because they lack standing to bring such a claim and, alternatively, because the defendants are immune (either absolutely or qualifiedly) from such a claim.[1] Because the court agrees that the Coburns have failed to state a claim, the court grants the motion to dismiss. Specifically, Mr. Coburn only has standing to sue one of the officials, Mr. Harder, and, regardless, the three officials are immune from suit. M.J. Willoughby—the Assistant Attorney General who filed the complaint against Mr. McCormick—is entitled to qualified immunity as a complaining witness and Shelly R. Welch and David L. Harder—the two officials from the Office of the Attorney General who investigated Mr. McCormick's actions and subpoenaed Ms. Coburn—are absolutely immune from liability in their duties of investigating, working up, and presenting cases involving the unauthorized practice of law.

## I. Uncontroverted Facts

The following facts are set out in the Coburns' pleading setting forth their § 1983 claim.[2] Merrily Coburn filed a

---

1. The Coburns brings this action against defendants in their individual capacities, not in their official capacities as officials of the Kansas Attorney General's Office. Although there is language in their pleading by which it could be inferred that this is an action against defendants in their official capacities, the Coburns clarified in their response to defendants' motion to dismiss that the claims are against the defendants only in their individual capacities. Accordingly, the court need not address defendants' argument that the Coburns' action against them in their official capacity is barred by the Eleventh Amendment.

2. On a motion to dismiss pursuant to Rule 12(b)(6), the only facts considered by the court are those contained in the plaintiff's complaint or documents attached as exhibits to the complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1274 (10th Cir.2001) (stating that in deciding a Rule 12(b)(6) motion, "a court may look both to the complaint itself and to any documents attached as exhibits to the complaint") (citing Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")).

§ 1983 action in the United States District Court for the District of Kansas against Roger A. Nordeen. Kansas Assistant Attorney General M.J. Willoughby defended Mr. Nordeen in the action. In M.J. Willoughby's reply in support of defendant's motion to dismiss (in *Coburn v. Nordeen*), Ms. Willoughby accused Mr. McCormick of authoring Ms. Coburn's response to defendant's motion to dismiss. She then filed a complaint about Mr. McCormick with the Consumer Protection Division of the Office of the Attorney General of Kansas.

Mr. McCormick bases his claims[3], which the Coburns in part join through their pleading, on Ms. Willoughby's complaint to the Consumer Protection Division. The Coburns' pleading states "that Willoughby, with retaliatory animus, fabricated evidence on which to base false complaints to the Consumer Protection Division against Coburns' and McCormick's presumed collaboration on Coburn's pleadings in *Coburn v. Nordeen,* id., thereby illegally enacting the machinery of a government agency—which retaliated against, interfered with, and at times totally barred the exercising of rights of association and expression guaranteed McCormick and the Coburns by the First and Fourteenth Amendments to the Constitution of the United States."

Around the first week of February, 2002, Merrily Coburn received a subpoena duces tecum from the Kansas Consumer Protection Division ("KCPD") (entitled "In the Matter of Investigation of Dale E. McCormick") directing her to appear in person before Assistant Attorney General David Harder at the Office of the Kansas Attorney General at 10:00 a.m. on the 13th of February, 2002, "to make true answers to all questions propounded to you concerning the facts and circumstances relating to complaints filed with this office against you...." The subpoena also asked Ms. Coburn "to furnish and identify" copies of (1) all documents or pleadings prepared by Mr. McCormick in the case, (2) copies of all documents or pleadings prepared solely by Ms. Coburn in the case, and (3) "[a]ll drafts, research materials, notes, sources and similar material generated when preparing the documents referred to in request number two above." The subpoena stated that any questions pertaining to the subpoena should be directed to Shelly R. Welch, Special Agent, or David L. Harder, Assistant Attorney General, Consumer Protection Division.

Ms. Coburn appeared as directed on the 13th of February, 2002. After being sworn for purposes of the deposition, Ms. Coburn objected on video tape to the subpoena and "ensuing inquisition in David Harder and Shelly Welch's presence, stating Fifth Amendment grounds against self-incrimination, and stating marital privilege against her and her husband's work product being illegally examined." But after Ms. Coburn raised the objections, "Shelly Welch appeared to tamper with the video recorder, David Harder threatened Mrs. Coburn with a court order, and Merrily Coburn was sworn in again."

During the course of the inquiry, all of Ms. Coburn's "drafts, research materials, notes, sources and similar material generated when preparing documents/pleadings in the case" were examined by Mr. Harder and Ms. Welch. Also, Mr. Welch "related a story to Mrs. Coburn about another pro se plaintiff who was 'in a lot of serious (in gist-but not necessarily verbatim) trouble'—largely in part because the other pro se plaintiff had sought out information from other non-lawyers and acted upon

---

**3.** For purposes of this motion, the court did not consider the allegations set forth in Mr. McCormick's complaint. Instead, the court looked only to the allegations of the Coburns' pleading setting forth their cause of action.

said information, just as Merrily Coburn had done in *Coburn v. Nordeen.*"

Ms. Coburn also alleges that she "was directed by David Harder to give an accounting of the background facts which gave rise to her claim in *Coburn v. Nordeen,* background facts that couldn't possibly have been pertinent to the investigation of Dale McCormick, but which assuredly were relevant to tactical defense concerns of the ongoing litigation in which Harder's co-worker M.J. Willoughby was (and is) defending Nordeen, whom Mrs. Coburn was (and is) continuing to prosecute."

Finally, after the inquiry ceased and the recorder was stopped, "David Harder 'threatened' Mrs. Coburn not to associate with Dale McCormick, inferring that McCormick was a criminal, and that Merrily Coburn's continued association with McCormick would get her into trouble of a very serious nature." Also, because Mr. Harder learned during the inquiry that Robert Coburn (Ms. Coburn's husband) had collaborated with her on the construction of pleadings in the case, he " 'cautioned' that she *and* her husband were 'walking a fine line,' inferring that their continued collaboration and prosecution of *Coburn v. Nordeen* was somehow tantamount to illegal, for which of course, there could or would be serious negative repercussions." (emphasis in pleading).

Based on these allegations, the Coburns (both Robert and Merrily) have brought a "Sec.1983 Retaliation against Exercising First (and Fourteenth) Amendment Speech and Association Rights—Claim." In the claim, they allege that around the first week of February, 2002, M.J. Willoughby "did, with retaliatory animus, and without any objective basis, initiate a Civil Investigative Demand[4] against Merrily Coburn." According to the pleading, "[t]he illegal initiation and execution of said [subpoena] caused Mrs. Coburn to stop exercising her First Amendment rights of association and expression regarding one Dale McCormick, out of fear that Ms. Willoughby could further punish her, with impunity, for her association with Dale McCormick." Robert Coburn, having collaborated with his wife on the pleadings in the case, "also stopped exercising his First Amendment rights of association and expression with one Dale McCormick, out of fear that Ms. Willoughby could punish his good friend Dale for what Robert was doing, and punish Robert's wife for her husband's continued association with Dale." In short, the Coburns explain, "Robert Coburn's First Amendment rights of association and speech with one Dale McCormick were so closely intertwined with those of his wife that they were trampled, tied, and bagged along with those of his wife by means of M.J. [Willoughby]'s illegal procurement of the [subpoena], and by David Harder and Shelly Welch's illegal execution of the [subpoena.]"

The pleading adds that the Coburns bring the same claim against David Harder and Shelly Welch, who "illegally executed the [subpoena] on or about the 13th of February, 2002, i.e., without any objective basis upon which to base a 'reasonable belief' that the [unauthorized practice of law] supposedly being investigated had occurred." Such action "frightened Mr. and Mrs. Coburn away from their First Amendment right of speech and associa-

---

4. The court presumes that the Coburns are referring to the Subpoena Duces Tecum attached to the complaint. A civil investigative demand is a statutorily created mechanism through which federal agencies obtain information relevant to investigations. For example, a section of the False Claims Act, 31 U.S.C. § 3733(a)(1), enables the Attorney General to issue civil investigative demands to "any person ... possess[ing] information relevant to a false claims law investigation."

tion with Dale McCormick." Mr. Harder's "veiled threats" also "terrified" Ms. Coburn and "also had a chilling effect on Robert Coburn's right to speech and association with his own wife, regarding *Coburn v. Nordeen.*"

Based on this claim, the Coburns seek compensatory damages in the amount of $100,000 and punitive damages in the amount of $10,000 from both M.J. Willoughby and David Harder, and they seek compensatory damages in the amount of $10,000, but no punitive damages, from Shelly Welch. The claims are against all three defendants in their individual capacities.

## II. Background Regarding Prosecution for Unauthorized Practice of Law in Kansas

Article 3, Section 1 of the Kansas Constitution vests the Kansas Supreme Court with "the inherent power to prescribe conditions for admission to the bar, and to define, supervise, regulate and control the practice of law" in Kansas. *State ex rel. Stephan v. Williams,* 246 Kan. 681, 687, 793 P.2d 234 (1990) (quoting *State ex rel. Stephan v. O'Keefe,* 235 Kan. 1022, 1036, 686 P.2d 171 (1984)); *see also State ex rel. Stovall v. Martinez,* 27 Kan.App.2d 9, 11, 996 P.2d 371 (2000) ("Our Supreme Court has the inherent power to define and regulate the practice of law."). That court has instructed that there is not a bright-line test as to what constitutes the unauthorized practice of law ("UPL"); instead, it must be determined on a case-by-case basis. *Williams,* 246 Kan. at 689, 793 P.2d at 239. But it has "repeatedly recognized the actions of counseling and advising clients on their legal rights and rendering services requiring knowledge of legal principles to be included within the definition of practicing law." *Martinez,* 27 Kan. App.2d at 11, 996 P.2d at 376 (citing *Williams,* 246 Kan. at 689, 793 P.2d at 239).

It has also explained that having the Attorney General bring an action in quo warranto is the "appropriate procedural vehicle to inquire into a person's authority to practice law." *Martinez,* 27 Kan. App.2d at 15, 996 P.2d at 376 (citing *Williams,* 246 Kan. at 690, 793 P.2d at 239); *see also Kansas Bar Ass'n v. Judges of Third Judicial Dist.,* 270 Kan. 489, 500, 14 P.3d 1154 (2000). Such an action, which is statutory in nature (K.S.A. § 60–1201 *et seq.*), is limited to injunctive or declaratory relief. *Id.* The Attorney General, therefore, is typically seeking to enjoin the alleged offender from continuing to practice law. *See, e.g., Williams,* 246 Kan. at 681, 793 P.2d at 234 (deciding quo warranto action brought to enjoin non-attorney from engaging in unauthorized practice of law).

On at least one occasion, however, the Attorney General has also brought a Kansas Consumer Protection Act ("KCPA") (K.S.A. § 50–623 *et seq.*) claim against a non-attorney engaged in the unauthorized practice of law. *Martinez,* 27 Kan.App.2d 9, 996 P.2d at 371. In *Martinez,* the Attorney General brought a quo warranto action against an insurance claims consultant who had allegedly engaged in the unauthorized practice of law. *Id.* The Attorney General also brought a KCPA claim, contending that the consultant's representations to consumers regarding his qualifications violated that statute. *Id.*

Under the KCPA, the Attorney General has the power to "conduct research, hold public hearings, make inquiries and publish studies. . . ." K.S.A. § 50–629. The Attorney General also has the power and duty to inquire into possible violations of the KCPA:

(a) If, by the attorney general's own inquiries or as a result of complaints, the attorney general has reason to believe that a supplier has engaged in, is engaging in or is about to engage in an act or

practice that violates this act, the attorney general or any deputy attorney general or assistant attorney general, may administer oaths and affirmations, subpoena witnesses or matter and collect evidence.

K.S.A. § 50–631(a). Two points are notable about the statute: it requires only "reason to believe" a violation has occurred and a complaint is not a prerequisite to initiate an investigation under the statute.

### III. 12(b)(6) Motion to Dismiss Standard

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

When, as here, a plaintiff is proceeding pro se, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir.2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (citing *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir.1991)). In other words, "[n]ot every fact must be described in specific detail, . . . and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) (quoting *Hall*, 935 F.2d at 1110). The liberal construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* (quoting *Hall*, 935 F.2d at 1110). "Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (quoting *Hall*, 935 F.2d at 1110).

### IV. Standing

The Attorney General defendants argue that the Coburns lack standing to bring a cause of action against them. Robert Coburn lacks standing, according to defendants, because defendants took no action against him. And neither of the Coburns have standing to complain of the Office of the Attorney General's prosecutorial function of inquiring into alleged unauthorized practice of law within the State of Kansas because it was Mr. McCormick that was being investigated. Finally, defendants contend Merrily Coburn lacks standing to file a civil rights claim based upon being subpoenaed as a witness in the inquiry into possible unauthorized practice of law by Dale McCormick.

■ "Standing and the cause of action based on violation of civil rights" are easily confused. *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.1982). Both "focus on the nature of the plaintiff's injury and the nature of the invasion of his [or her] alleged right." *Id.* The Supreme Court has "held that, to satisfy Article III's standing

requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The party invoking federal jurisdiction carries the burden of establishing these three elements. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

The determination of whether Article III standing exists must also comport with the "manner and degree of evidence required at the successive stages of the litigation." *Id.* Since this case remains at the pleading stage, all facts averred by the Coburns must be taken as true for purposes of the standing inquiry—as they must be for any other issue presented. "[G]eneral factual allegations of injury resulting from [the challenged conduct] may suffice [to support the existence of standing], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.*

■ Liberally construing the Coburns' pro se pleading, and taking into account that this is a motion to dismiss, the court concludes that Ms. Coburn has put forth allegations sufficient to provide standing against each defendant and Mr. Coburn has put forth allegations sufficient to provide standing against Mr. Harder. In short, the Coburns allege that Ms. Willoughby fabricated evidence on which to base a complaint to the KCPD against Mr. McCormick and then "initiated" a subpoena against Ms. Coburn without "any objec-

tive basis" to do so. Mr. Harder and Ms. Welch (KCPD officials) then executed that subpoena, requiring Ms. Coburn to sit through a video taped inquiry. During the inquiry, the Coburns allege that Mr. Harder threatened Ms. Coburn not to associate with Mr. McCormick and warned Ms. Coburn that her husband's involvement in the case was nearing the line of legal activity.

Based on these activities, which the Coburns allege were undertaken in retaliation for their association with Mr. McCormick, the Coburns allege they have been deprived of their First Amendment right to associate with Mr. McCormick and obtain his general help (such as serving process and some pleadings) on the case. The Coburns also allege that Mr. Harder's threat about Mr. Coburns involvement has "chilled" their right of association as well.

■ Defendants argue that Mr. Coburn lacks standing because no action was taken against him. They contend his theory is that his spouse is affected, therefore he is also. They cite to *Doyle v. Oklahoma Bar Assoc.*, 998 F.2d 1559 (10th Cir.1993), for the general proposition that "one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be *directly* injured by its deprivation." *Id.* (emphasis in original). The Coburns response argues that Mr. Coburn has standing but the entire argument relates to Mr. Harder's threat to Ms. Coburn about Mr. Coburn's involvement in the case. No argument is made regarding Mr. Coburn's standing to sue Ms. Willoughby or Ms. Welch. Accordingly, the court concludes that Mr. Coburn does not have standing to sue them. In short, any secondary impact Ms. Willoughby's decision to file a formal complaint against Mr. McCormick with the KCPD and Ms. Welch's involvement in subpoenaing Mr. Coburn's wife had on Mr. Coburn's First

Amendment right to associate with Mr. McCormick for the purposes of obtaining help on his wife's lawsuit is too speculative to support a cause of action. Because Mr. Coburn was not a party to the lawsuit this court is unable to say that he has a First Amendment right to associate with Mr. McCormick regarding that lawsuit.

■ The court does believe that Mr. Coburn's allegations, construed in the light most favorable to him, do provide standing to sue Mr. Harder. If Mr. Harder did threaten Ms. Coburn not to obtain help from her husband on the lawsuit, it is reasonable to infer (as the court must on this motion to dismiss) that Mr. Harder intended for Ms. Coburn to relay that threat to her husband in an attempt to deter him from associating with her on the lawsuit. Thus, he suffered an injury in fact—his First Amendment right to associate with his wife—that is derived from Mr. Harder's actions. It is too simplistic to conclude that Mr. Coburn lacks standing merely because the threat was not told to him directly.

Again citing to *Doyle*, defendants also argue that Ms. Coburn lacks standing to complain of the Attorney General's prosecutorial function of inquiring into alleged UPL within the State of Kansas. In *Doyle*, the plaintiff brought a civil rights action against the Oklahoma Bar Association and several other individuals involved in handling his grievance against his ex-wife's attorney (he alleged the attorney had committed perjury in a child custody dispute). 998 F.2d at 1559. The plaintiff was essentially alleging that he was denied due process rights when his grievance was not addressed. The Tenth Circuit found the plaintiff did not have standing, applying the general proposition that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* (quoting *Linda R.S. v. Rich-*

*ard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)).

In this case, however, the circumstances are distinguishable. Ms. Coburn claims a direct injury in fact that is derived from Ms. Willoughby's actions in filing a complaint against Mr. McCormick, Mr. Harder and Ms. Welch's decision to subpoena her, and Mr. Harder's threats to her during his inquiry of her. In short, Ms. Coburn is saying that she was retaliated against for her involvement with Mr. McCormick and that Ms. Willoughby's complaint and the subsequent inquiry of Ms. Coburn were tactical ploys aimed at separating Ms. Coburn from Mr. McCormick and gaining information about Ms. Coburn's case. Consequently, Ms. Coburn's injury is the direct result of defendants' alleged actions. Accordingly, she has standing to sue each defendant.

## V. Immunity

Defendants argue that even if the Coburns have standing to bring a claim, the defendants are entitled to immunity, either absolutely or qualifiedly. In analyzing the immunity issue, the first step is to characterize the government activity. *Clulow v. State of Okl.*, 700 F.2d 1291, 1298–99 (10th Cir.1983), *overruled on other grounds by Newcomb v. Ingle*, 827 F.2d 675 (10th Cir. 1987). In determining whether particular acts of government officials are eligible for immunity, the courts apply a "functional approach ... which looks to the nature of the function performed, not the identity of the actor who performed it." *Malik v. Arapahoe County Dept. of Social Servs.*, 191 F.3d 1306, 1314 (10th Cir.1999) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

In this action, M.J. Willoughby was functioning as a complaining witness. The Coburns allege that Ms. Willoughby filed a

complaint with the KCPD of the Office of the Attorney General which, in turn, spurred an investigation of Mr. McCormick's involvement in *Coburn v. Nordeen.*[5] Shelly R. Welch and David L. Harder were functioning as investigators of an alleged Consumer Protection Act violation by Mr. McCormick for the unauthorized practice of law. Based on these functions, the court believes that M.J. Willoughby, in her capacity as a complaining witness, is entitled to qualified immunity while Shelly R. Welch and David L. Harder, both in a capacity of investigating a case allegedly involving the unauthorized practice of law, are entitled to absolute immunity.

### A. Absolute Immunity

An official claiming the right to absolute immunity "bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). It is well settled that prosecutors are absolutely immune from being sued under section 1983 concerning activities "intimately associated with the judicial . . . process," such as launching and pursuing criminal prosecutions. *Collins v. Johnson County, KS,* 2003 WL 42164, *2 (10th Cir. Dec. 16, 2002) (quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1489 (10th Cir.1991)) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "[S]tate attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings" are also "absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial . . . process.'" *Scott v. Hern,* 216 F.3d 897, 908 – 909 (10th Cir.2000)(quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484,

1490 (10th Cir.1991)) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *see also Collins v. Johnson County, KS,* 2003 WL 42164, *2 (10th Cir. Dec.16, 2002)(unpublished decision).

Absolute immunity does not apply to actions "that are primarily investigative or administrative in nature;" however, it "may attach even to such administrative or investigative activities 'when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.'" *Id.* (quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir.1991))(quoting *Snell v. Tunnell,* 920 F.2d 673, 693 (10th Cir.1990)). In drawing this distinction, the court is guided by the following rule: "The more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach." *Id.* (quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir.1991)). Investigative acts outside the scope of absolute immunity are entitled to qualified immunity. *Id.*

In this action, the Coburns allege that Shelly R. Welch and David L. Harder are officials of the Kansas Attorney General's Office who undertook an investigation of Mr. McCormick's involvement in *Coburn v. Nordeen.* As part of that investigation, they subpoenaed Merrily Coburn and later questioned her in a video-taped inquiry. During the inquiry, the Coburns allege that Mr. Harder threatened Ms. Coburn not to associate with Mr. McCormick and cautioned her that she and her husband were "walking a fine line," which the Coburns inferred to mean that their actions in collaborating on the lawsuit were coming close to being illegal.

---

5. In fact, the Coburns argue at page 29 of their response that Ms. Willoughby should

"be placed in the category of a complaining witness."

The Tenth Circuit, like many other circuits, has held that the absolute prosecutorial immunity outlined above extends to "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline," and that such officials "enjoy absolute immunity from damage claims for such functions." *Clulow,* 700 F.2d at 1298 (citing *Simons v. Bellinger,* 643 F.2d 774 (D.C.Cir.1980); *Kissell v. Breskow,* 579 F.2d 425 (7th Cir. 1978); *Ginger v. Wayne County Circuit Court,* 372 F.2d 621 (6th Cir.1967); *Clark v. Washington,* 366 F.2d 678 (9th Cir. 1966)).

■ The Coburns first argue that absolute immunity should not apply because the two officials (Mr. Harder and Ms. Welch) of the Kansas Attorney General's Office were merely investigating an alleged violation. *Clulow,* however, is clear that investigating the unauthorized practice of law—though removed from the judicial process—is a function that warrants absolute immunity.

*Clulow,* like most of the cases concerning investigation of the unauthorized practice of law, involved officials of the state (Oklahoma) bar association who were empowered to investigate actions involving the unauthorized practice of law. *Id.* Here, by contrast, the two officials are members of the KCPD of the Office of the Attorney General. Interestingly, the two officials were not investigating Mr. McCormick's actions as part of an investigation to bring a quo warranto action to enjoin Mr. McCormick from the unauthorized practice of law—the usual procedure for challenging the unauthorized practice of law in Kansas. Instead, the two officials were investigating whether Mr. McCormick's actions violated the KCPA. While the court questions why the investigation was initiated on such grounds (and notes that this adds credibility to Mr. McCormick's and the Coburns' theory that the investigation

may have been undertaken with a malicious purpose), the officials were within their statutory jurisdiction under the KCPA and were performing an investigative function nearly identical to the bar officials in *Clulow* and similar cases. As such, the same policy reasons for affording the officials absolute immunity apply.

The Coburns argue to the contrary. They contend that Shelly Welch and David Harder were acting in excess of their jurisdiction. The KCPA requires "reason to believe" a violation has occurred, is occurring, or will occur before an investigation is permitted. K.S.A. § 50–631. The Coburns argue there was no reason to believe Mr. McCormick was violating the statute. They concede that Mr. McCormick shared information with Ms.Coburn and that Mr. McCormick served process and some pleadings for Ms. Coburn, but they contend no other evidence exists to establish Mr. McCormick was practicing law on her behalf. In support of this position, they point to Ms.Willoughby's statement, in a motion filed in federal court, that "no facts have been established with regard to McCormick's activities vis-a-vis the Coburns." Thus, they conclude that Ms. Willoughby's complaint was based on "pure speculation." The court cannot agree.

The Coburns concede that Ms. Willoughby based her complaint on three premises: (1) Mr. McCormick made Ms. Willoughby aware that he was legally serving process and pleadings for Merrily Coburn; (2) Mr. McCormick and Ms. Coburn both used a similar theory in their respective pleadings; and (3) Ms. Willoughby was familiar with Mr. McCormick's pleadings. Although the Coburns argue that each of these premises was wrong, the complaint was enough to satisfy the "reason to believe" standard that the KCPA requires. Whether Ms. Willoughby did in fact have evidence to justify the complaint is another question. But for purposes of

evaluating Ms. Welch's and Mr. Harder's actions, the court believes it is enough to state that they received a complaint from Ms. Willoughby that Mr. McCormick was practicing law without a license. Under the statutory framework, they were then permitted to subpoena witnesses and launch an investigation to determine whether the accusations aimed at Mr. McCormick were valid. K.S.A. § 50–631. Accordingly, the court concludes that Shelly R. Welch and David L. Harder are entitled to absolute immunity for their investigation of Mr. McCormick and their decision to subpoena Merrily Coburn in conjunction with that investigation.[6]

## B. Qualified Immunity

■ Qualified immunity safeguards government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The purpose of qualified immunity is to evade excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotations and citations omitted). It is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz,* 533 U.S. 194, 200–01, 121

S.Ct. 2151, 150 L.Ed.2d 272 (2001) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Consequently, the Supreme Court has explained "that courts should resolve the 'purely legal question,' *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), raised by a qualified immunity defense 'at the earliest possible stage in litigation.'" *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

"Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." *Currier v. Doran,* 242 F.3d 905, 917 (10th Cir.2001), *cert. denied,* 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421, 70 U.S.L.W. 3163 (U.S. Nov. 13, 2001) (No. 01–382), and *cert. denied,* 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421, 70 U.S.L.W. 3270 (U.S. Nov. 13, 2001) (No. 01–551). Such a determination is made under the ordinary motion to dismiss standard: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley,* 355 U.S. 41, 45–46, 78 S.Ct. 99 (1957)). In *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, the Supreme Court instructed lower courts to always first ask whether a constitutional violation has occurred; otherwise, the body of law regarding constitutional violations may be deprived of development. *Id.*

If plaintiffs fail to meet their initial burden of alleging a constitutional violation,

---

**6.** *See, e.g., Brewer v. Hill,* 453 F.Supp. 67, 69 (N.D.Tx.1978) (holding that officials in the Attorney General's Office were absolutely immune from suit for their involvement in an action filed under the Texas Deceptive Trade Practices and Consumer Protection Act of the

State of Texas). The court explained that the "reasons for affording quasi-judicial immunity in this instance are the same as if the Attorney General or one of his deputies had been seeking an indictment and prosecuting a criminal action." *Id.*

"there is no necessity for further inquires concerning qualified immunity." *Id.* If, on the other hand, plaintiffs have pled allegations, that if proven, amount to a constitutional violation, "the next sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct." *Id.* That is, "the plaintiff[s] must prove the right was sufficiently clear that a reasonable official would have understood that his [or her] conduct violated the right." *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201, 121 S.Ct. 2151.

### 1. Constitutional Violation—First Amendment Retaliation

"[T]he purpose behind the Bill of Rights, and of the First Amendment in particular [,is] to protect unpopular individuals from retaliation-and their ideas from suppression-at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). Thus, the First Amendment bars retaliation for exercising the right of association. *See, e.g., DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir.1990).

In this case, Ms. Coburn alleges that in response to her association with Mr. McCormick and her lawsuit against Mr. Nordeen, defendants undertook a campaign of retaliation. Ms. Coburn's underlying lawsuit against Mr. Nordeen in his individual capacity alleged that while acting as a Johnson County Assistant District Attorney he swore to a false and deceptive complaint and supporting affidavit of probable cause, which resulted in her arrest. *Coburn v. Nordeen,* 206 F.Supp.2d 1119 (D.Kan.2002). Mr. Nordeen filed a motion to dismiss the lawsuit and Ms. Coburn

filed a response. In Mr. Nordeen's reply, M.J. Willoughby—Mr. Nordeen's attorney—accused Mr. McCormick of authoring Ms. Coburn's response. At that time, Ms. Coburn alleges that Mr. McCormick had made Ms. Willoughby aware that he was serving process and pleadings in the case for Ms. Coburn. Ms. Willoughby also filed a complaint with the KCPD of the Office of the Attorney General. That complaint spurred an investigation, which resulted in Ms. Coburn being interviewed and allegedly threatened. In sum, then, Ms. Coburn brings this First Amendment retaliation claim alleging that Ms. Willoughby retaliated against her for filing a lawsuit against Mr. Nordeen and for associating with Mr. McCormick by obtaining general legal information from him and allowing him to serve process and some pleadings in the case.

First Amendment retaliation claims are generally, but not always, brought in the public employment context. 44 Fed. Appx. 896, 2002 WL 1788529, at *5 (10th Cir. 2002) (citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). In this case, Ms. Coburn is not an employee of defendant and no contractual relationship exists between the parties. The court, therefore, employs the substantive standard announced by the Tenth Circuit in *Worrell v. Henry,* 219 F.3d 1197 (10th Cir.2000), *cert. denied,* 533 U.S. 916, 121 S.Ct. 2521, 150 L.Ed.2d 693 (2001). *Worrell* recognized "an alternative to the *Pickering* balancing is warranted when allegations of retaliatory conduct are directed at a defendant who is not the plaintiff's employer and when there is no contractual relationship between them." *Worrell,* 219 F.3d at 1212.[7]

---

7. The issue is compounded in this action because one of Ms. Coburn's theories is that Ms. Willoughby retaliated against her for associat-

ing with Mr. McCormick. The Tenth Circuit has observed that "courts are split as to whether the *Pickering* analysis applies to free-

[The test] require[s] proof of the following elements: (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Worrell,* 219 F.3d at 1212 (quoting *Lackey,* 1999 WL 2461, at *3).

### a. Constitutionally Protected Activity

In this case, the protected activity Ms. Coburn alleges to have engaged in was associating with Mr. McCormick for general help regarding her lawsuit. In her papers, she states that Mr. McCormick's involvement included "service of process and some pleadings." Additionally, Ms. Coburn alleges to have engaged in the protected activity of filing a civil rights lawsuit against Mr. Nordeen.

Two distinct lines of Supreme Court decisions have elaborated on constitutionally protected "freedom of association:"

In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State.... In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to association for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.

*Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In this action, Ms. Coburn does not allege that she has an "intimate human relationship" with Mr. McCormick and the court concludes that their relationship does not fall into that category. Thus, it appears that her claim is limited to the second category: the right to associate for the purpose of engaging in activities protected by the First Amendment. In particular, associating for the purpose of filing a lawsuit against a government official— Mr. Nordeen.

In *Owens v. Rush,* 654 F.2d 1370, 1379 (10th Cir.1981), the Tenth Circuit, construing the Supreme Court's decision in *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), held that First Amendment protection is afforded to activities involving the assistance of litigation aimed at vindicating civil rights. *Id.* at 1379; *see also Copp v. Unified School District # 501,* 882 F.2d 1547 (10th Cir. 1989) (discussing *Owens* ). Such activities, including "attending meetings on necessary legal steps" and "associating for the purpose of assisting persons seeking legal redress," are modes of expression and association protected by the First Amendment. *Id.* The Tenth Circuit expressly

---

dom of association claims." *Torres v. Pueblo Bd. of County Com'rs,* 229 F.3d 1165 (10th Cir.2000)(unpublished decision)(citing *Balton v. City of Milwaukee,* 133 F.3d 1036, 1039–40 (7th Cir.1998); *Gregorich v. Lund,* 54 F.3d 410, 414 n. 4 (7th Cir.1995); *Schalk v. Gallemore,* 906 F.2d 491, 498 n. 6 (10th Cir.1990) (applying public concern test to identical free speech/free association claims in context of this case, but recognizing that the public concern test "may be an inapt tool of analysis" in other public employee/free association contexts)). As another court observed, however, no separate test exists for "pure association" claims. *Quinn v. Village of Elk Grove Bd. of Fire and Police Com'rs,* 2002 WL 31875464, at *4 (N.D.Ill.2002) (applying *Pickering* analysis to retaliation claim arising from associational rights). Moreover, in this action the court is not applying the *Pickering* analysis, but instead the *Worrell* test. Thus, the *Pickering* balancing analysis is not applied anyway.

noted that such activities would be protected, "although they were private and not public activities." *Id.* In that case, the Tenth Circuit allowed an "undersheriff" to pursue a First Amendment retaliation claim based on his allegation that the sheriff's department fired him because he assisted his wife in filing a sex discrimination claim against the department. *Id.* Based on *Owens*, it would appear that Ms. Coburn had a First Amendment right to associate with Mr. McCormick for general help regarding her lawsuit.[8]

Consequently, construing the Coburns' allegations in the light most favorable to them, the court concludes that Ms. Coburn engaged in the constitutionally protected activity of associating with Mr. McCormick for the purpose of obtaining general help from him on her lawsuit.

### b. Chilling Effect on the Protected Activity

Next, the court turns to the second element of the *Worrell* test: whether Ms. Willoughby's actions caused Ms. Coburn "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Worrell,* 219 F.3d at 1212 (citation omitted). "Generally speaking, government action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater,* 78 F.3d 484, 488 (10th Cir.1996) (citations omitted).

 Ms. Coburn alleges that Ms. Willoughby's adverse action was fabricating evidence on which to base a complaint and then filing that complaint against Mr. McCormick with the KCPD of the Office

---

**8.** *Owens,* however, was decided before the Supreme Court's decision in *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Several courts have subsequently held that after *Connick,* engaging in a lawsuit amounts to constitutionally protected activity only if it involves a matter of public concern. *Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 720–21 (6th Cir.1989), *vacated on other grounds,* 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990); *see also Grabow v. Independent Sch. Dist. No. I–008,* 86 F.3d 1166, 1996 WL 282166 (10th Cir.1996)(unpublished opinion); *McCook v. Springer Sch. Dist.,* 44 Fed. Appx. 896, 903–904, 2002 WL 1788529, at *5 (10th Cir.2002) (unpublished opinion); *Rendish v. City of Tacoma,* 123 F.3d 1216 (9th Cir.1997) (noting that several other circuits have reached a similar conclusion). *But see San Filippo v. Bongiovanni,* 30 F.3d 424 (3rd Cir.1994) (noting that while every other circuit has required litigation to involve matters of public concern, the petition clause provides independent First Amendment protection for the "mere act of filing a non-sham petition" even if it does not involve matters of public concern).

In determining whether a lawsuit involves a matter of public concern, the Sixth Circuit adopted the reasoning of the Seventh Circuit in *Yatvin v. Madison Metropolitan School District,* 840 F.2d 412 (7th Cir.1988). The Sixth Circuit, quoting the Seventh Circuit, drew the distinction between litigation which clearly constitutes speech on a matter of public concern—such as litigation to eliminate school segregation—and litigation initiated "to advance [a] career, not promote a cause." *Rice,* 887 F.2d at 721 (quoting *Yatvin,* 840 F.2d at 419).

Here, like in *Yatvin,* Ms. Coburn is not advancing a cause or claiming that there is a bigger pattern of official misconduct; she is simply seeking redress for private rights she feels were violated by Mr. Nordeen. Thus, while her claim is a civil rights claim under § 1983—much like Ms. Yatvin's claim was a civil rights claim under Title VII—the substance of her lawsuit is not aimed at achieving anything other than redress for her private grievance. In other words, her lawsuit does not involve a matter of public concern.

Nonetheless, the court will assume that *Owens* remains good law because the Tenth Circuit has cited *Owens* after *Connick* in both *Copp v. Unified Sch. Dist. No. 501,* 882 F.2d 1547 (10th Cir.1989) and *Hinsdale v. City of Liberal, Kan.,* 19 Fed. Appx. 749, 2001 WL 980781 (10th Cir.2001) (unpublished decision), the court reaches the same result by deciding this case on other grounds, and *Owens*—unlike *Rice* and the other cases cited—rests on the freedom of association prong of the First Amendment.

of the Attorney General. The court does not believe that such action should have deterred a person of ordinary firmness from engaging in the constitutionally protected activity of associating with Mr. McCormick for general help on the lawsuit. That is, a complaint specifically aimed at Mr. McCormick's alleged unauthorized practice of law, even if based on fabricated evidence, should not have caused a person of ordinary firmness to stop associating with Mr. McCormick for general help on the lawsuit. The complaint was not aimed at Ms. Coburn; but rather, it was aimed at Mr. McCormick for allegedly practicing law on behalf of Ms. Coburn.[9] Thus, while it might be the case that Mr. McCormick was deterred from associating and helping Ms. Coburn, Ms. Coburn would have no reason to stop associating with Mr. McCormick; no action had been taken with regard to her. In other words, if all Mr. McCormick was doing was helping her by serving process and other pleadings, then there would have been no reason not to continue to have him serve those functions. Ms. Coburn had nothing to lose by such association.

It is irrelevant whether the subsequent action taken by investigators in the Consumer Protection Division (Mr. Harder and Ms. Welch), in subpoenaing Ms. Coburn and then allegedly threatening her, would have caused a person of ordinary firmness to stop associating with Mr. McCormick. The court has already concluded that they are absolutely immune for such action; it is Ms. Willoughby's action alone that is implicated in this analysis.

In short, then, Ms. Coburn's allegations fail to establish that the action taken by Ms. Willoughby would have caused a person of ordinary firmness to stop associating with Mr. McCormick for general help regarding her lawsuit.

### c. Defendants' Adverse Action Motivated as Response to Protected Conduct

Finally, although not necessary, the court will address the third element: whether the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Construing Ms. Coburn's pleading in the light most favorable to her, the court would conclude, if it actually were to reach that issue, that Ms. Willoughby's action (allegedly fabricating evidence and filing a complaint) was motivated by Ms. Coburn's decision to associate with Mr. McCormick and obtain general help from him regarding her lawsuit as well as her decision to bring a lawsuit against Mr. Nordeen. The Coburns' pleading points out that Ms. Willoughby and Mr. McCormick have squared off in litigation on a number of occasions; consequently, it is reasonable to infer that Ms. Willoughby was attempting to deter Ms. Coburn from seeking his general assistance. Because the court must make all reasonable inferences in favor of Ms. Coburn, it cannot consider Ms. Willoughby's explanation that she filed a complaint against Mr. McCormick because she truly believed Mr. McCormick was drafting pleadings on behalf of Ms. Coburn.

**9.** Although Ms. Coburn points to one line in the subpoena that states that she is to appear to answer questions regarding complaints filed with the KCPD "against you," in the context of the subpoena it is unreasonable to infer that the investigation was concerning Ms. Coburn individually. It is clear that the investigation was centered on Mr. McCormick and any complaint regarding Ms. Coburn derived from the allegation that Mr. McCormick was practicing law on her behalf. In fact, the case file is entitled: "In the Matter of Investigation of Dale E. McCormick" and this was clearly stated on the caption of the subpoena.

**1172**

### 2. Clearly Established Violation

Because the Coburns failed to meet their initial burden of alleging a constitutional violation, "there is no necessity for further inquires concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Attorney General defendants' motion to dismiss claims of Robert and Merrily Coburn (Doc. 144) is granted. Mr. Coburn does not have standing to sue Ms. Willoughby or Ms. Welch, Mr. Harder and Ms. Welch are absolutely immune from liability, and Ms. Willoughby is qualifiedly immune from liability.